UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | DOCKET NO. 2:10CR09 |
| ) | |
| vs. ) | |
| ) | MOTION IN LIMINE: DEFENSE |
| ) | PSYCHOLOGIST and |
| JAMES ERNEST LESPIER, ) | MOTION FOR *DAUBERT* HEARING |
| Defendant. ) | |
| _____ ) | |

NOW COMES the United States of America, by and through Anne M. Tompkins, United States Attorney for the Western District of North Carolina, in response to the Defendant's Notice of Expert Witness filed on May 12, 2011 (Doc. #44). The United States moves *in limine* to exclude the testimony of the proposed expert and requests a pre-trial *Daubert* hearing. In support of this Motion, the United States offers the following:

### INTRODUCTION

The Defendant filed a Notice of Expert Witness on May 12, 2011 (Doc. # 44), little more than two weeks before the trial date of May 31, 2011, which named John Clement as a proposed defense expert in human psychology. The Notice states that Clement may offer an opinion "as to possible reasons for such alleged inconsistencies [in the Defendant's statements to law enforcement] if in fact such inconsistencies do exist." *Def. Notice of Expert Witness*, Doc. # 44, May 12, 2011, p. 1. The Government has not received a report and has no information about Clement's proposed testimony other than what appears in the Notice. The Government objects to

this expert on two grounds: first, the notice is insufficient and stands in violation of Fed. R. Crim. P. 16(b)(1)(C), and second, the proposed testimony will not aid the trier of fact and will invade the province of the jury to determine the credibility of witnesses, in this case the Defendant himself.

Juries in virtually every criminal case assess the credibility of witnesses without a lengthy explanation of the current state of research into human memory and observation. As will the jury in this case, juries in many cases are called upon to evaluate differing versions of events and to sort out which version to believe and which version to discount. Juries are not routinely, or even rarely, presented with extensive testimony on research into memory or human observation in cases like this one. Juries evaluate competing versions of events applying their collective common sense in light of the adversarial presentations of the parties, including arguments of counsel, and the instructions of the trial judge. There is no reason to believe (and the Defendant does not provide sufficient information to either the Government or the Court to suggest) that a psychologist will assist the trier of fact in this routine exercise. To the contrary, there are strong reasons to believe that the proffered testimony may confuse, mislead, and unduly influence the jury.

This Court has substantial discretion to decide whether expert testimony is admissible, and whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury or considerations of undue delay and waste of time. The Court also has the discretion to exclude this testimony for failure to provide adequate notice.

## BACKGROUND

On or about May 18, 2010, the victim, Erien Amanda "Mandi" Smith, was killed by a gunshot wound to the back of the neck. The Defendant, James Ernest Lespier, an intimate partner to the victim and the father of her 3 year old son, called 911 to report the shooting. Officers responded to Lespier's home to find Smith's body lying on the living room floor and the Defendant covered in her blood. The Defendant gave several statements in the hours following his arrest, first to the Cherokee Indian Police Department ("CIPD") patrol officers, then to the FBI and CIPD detectives (and later to a fellow inmate, Mitchum Scott Turpin). The theme of each of these statements was that the shooting was accidental. Although the details of each of statement differ substantially, the Defendant essentially claimed that he took a prescription pill from the victim so that she would not consume it. In response, he claimed, she produced and brandished his pistol and demanded that he return the pill. He stated that he attempted to disarm her and in the process the gun accidentally discharged, killing her.

At trial the central issue will be the legitimacy of this claim of accident. The Government will contend that given the angle of trajectory of the gunshot wound that Smith could not have been wielding the weapon when it fired and could not have shot herself. Additionally, the Defendant's claim of accident is highly suspect because he gave multiple different accounts of how the shooting occurred. These descriptions varied substantially, and the Government will contend that this variety, combined with the Defendant's obvious self-interest, proves that the Defendant was not telling the truth about the crime.

The Defendant was indicted on June 1, 2010. Attorney Fredilyn Sison initially represented him, but on November 10, 2010 current counsel Rusty McLean appeared on his

behalf.[1] Since that time the Defendant has filed three Motions to Continue, first on November 18, 2010 (Doc. # 17), then again on December 30, 2010 (Doc. # 23), and again on February 18, 2011 (Doc. # 33). The matter is currently scheduled for trial on May 31, 2011.

On May 12, 2011, the Defendant filed his Notice of Expert Witness (Doc. # 44), just over two weeks before the start of the trial. The day before the filing of the Notice the Defendant provided the Government with John Clement's curriculum vitae, but did not provide a report of his proposed testimony. As of this filing the Government has made multiple requests for a report and the Defendant has not complied.

## ARGUMENT

I. **THE PROPOSED TESTIMONY SHOULD BE EXCLUDED FOR FAILURE TO PROVIDE ADEQUATE NOTICE AS REQUIRED BY RULE 16**

Federal Rule of Criminal Procedure 16 states, in pertinent part:

The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial if . . . the defendant requests disclosure under subdivision (a)(1)(G) and the government complies . . . . This summary must describe the witness's opinions, the bases and reasons for these opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(b)(1)(C). Rule 16 also provides for several remedies for failure to comply with the Rule, including a motion to continue and exclusion of the evidence. Fed. R. Crim. P. 16(d)(2). Exclusion is an appropriate remedy "where a late proffer of evidence by the defense substantially prejudices the government in its ability to find its own expert and conduct similar testing." *United States v. Dorsey*, 45 F.3d 809, 816 (4th Cir. 1995); *see also United States v.*

---

[1] Mr. McLean formally appeared in writing on November 16, 2010 (Doc. # 14). Co-counsel Brad Ferguson formally appeared in writing on November 18, 2010 (Doc. # 16).

Page 4 of 19

*Curry*, 977 F.2d 1042, 1-52 (7th Cir. 1992) (district court did not err in excluding testimony of eyewitness identification expert when the government was given only four days' notice); *United States v. Dowling*, 855 F.2d 114, 118 (3rd Cir. 1988) (expert excluded when only five days' notice given).

As of this date – now thirteen days before the start of trial – the Defendant has not provided a report of this expert. All that has been disclosed is the expert's CV and the broad statement that he might "offer an opinion as to possible reasons for such alleged inconsistencies if in fact such inconsistencies do exist." Doc. # 44, p. 1. It is difficult for the Government to even respond to this notice given the lack of information, much less evaluate the strength of the opinion and, if necessary, retain a rebuttal expert.

The Government neither desires nor seeks a motion to continue. This matter has been continued four times (once by former defense counsel and three times by the current defense team). The appropriate remedy, therefore, is exclusion of the evidence.

## II. THE PROPOSED TESTIMONY SHOULD BE EXCLUDED BECAUSE IT WILL NOT AID THE TRIER OF FACT AND INSTEAD WILL INTRUDE UPON THE EXCLUSIVE PURVIEW OF THE JURY TO DETERMINE CREDIBILITY

In that the Defendant has not provided a report to the Government that sets forth what the expert opinion might be and the basis for it, it is difficult for the Government to substantively object to the introduction of such evidence. The Government consulted with defense counsel by telephone on May 17, 2011, and at that time the Defendant's attorneys verbally confirmed that psychologist John Clement did not evaluate, diagnose or treat the Defendant, but that he may offer an opinion as to why someone in a stressful situation might make inconsistent statements about what he did and/or observed. Assuming this to be the full scope of the expert's testimony,

then this type of evidence is akin (if not identical to) expert testimony concerning eyewitness identifications and the fallibility of human memory, which has been strongly and consistently disfavored by the courts for its failure to aid the trier of fact and its propensity to intrude upon the exclusive purview of the jury to determine credibility.

### A. Summary of Applicable Law

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and Supreme Court case law interpreting the rule.[2] To introduce expert testimony, the proponent must first demonstrate that the proffered expert is "qualified as an expert by knowledge, skill, experience, training, or education to render his or her opinions." Fed. R. Evid. 702. Next, the proponent must satisfy the court that the proffered testimony is both relevant and reliable. *Id.*; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The Supreme Court has interpreted Rule 702 as requiring that the district court act as a "gatekeeper," ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); and *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997). Under Fed. R. Evid. 104(a), the proponent of the testimony bears the burden of establishing to the trial judge that "the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 Advisory Committee's Note (2000 amends.) (citing *Bourjaily v. United States*, 483

---

[2] Fed. R. Evid. 702 provides: " If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

U.S. 171 (1987)). The decision whether to admit or exclude expert testimony is within the broad discretion of the district court. *General Electric Co. v. Joiner*, 522 U.S. at 136-37; *United States v. Washington*, 106 F.3d 983, 1008 (D.C. Cir. 1997).

In evaluating whether expert testimony is reliable, the court considers the following non-exhaustive list of factors: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the method's known or potential rate of error; (4) the existence of standards controlling the technique's operation; and (5) whether the theory or technique finds general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 592-94; *Ambrosini v. Labarraque*, 101 F.3d 129, 134 (D.C. Cir. 1996)(approving admission of expert testimony linking Depo-Provera with plaintiff's birth defects based on *Daubert* analysis). *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)(approving district court's exclusion of expert testimony as unreliable based on flexible application of *Daubert* factors); Fed. R. Evid. 702 Advisory Committee's Note (2000 amends.). There also must be "a sufficiently rigorous analytical connection between the expert's methodology and the conclusions to which the proponent seeks to elicit from the expert." *Nimely v. City of New York*, 14 F.3d 381, 396 (2nd Cir. 2005). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)(approving exclusion of expert testimony as unreliable where studies offered in support of expert's conclusion were dissimilar to facts of case). Thus, an expert opinion that is based on data, methodology or studies

Page 7 of 19

Case 2:10-cr-00009-MR-DLH   Document 48   Filed 05/18/11   Page 7 of 19

that are inadequate to support the conclusions reached must be excluded as unreliable. *Nimely*,14 F.3d at 396-97 (holding that admission of expert testimony that officer could have innocently mis-remembered suspect's turning and facing him as happening before or simultaneously with, rather than after, his firing of shot was abuse of discretion requiring reversal).

Even if the court finds that a proffered expert is qualified and his testimony is reliable, the testimony may not be admitted unless the court also finds that the testimony will assist the trier of fact. Expert testimony assists the trier of fact if: (1) the testimony is relevant; (2) the testimony is not within the jurors' common knowledge and experience; and (3) the testimony will not usurp the jurors' role of evaluating a witness's credibility. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006). Expert testimony is relevant if the "'reasoning or methodology properly can be applied to the facts in issue.'" *Daubert*, 509 U.S. at 593; *Ambrosini*, 101 F.3d at 134. As the Court in *Daubert* cautioned, "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes.'" *Id.* at 591.

Even if the proposed expert testimony is admissible under Rule 702, it may be excluded under Fed. R. Evid. 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *E.g.*, *United States v. Stokes,* 388 F.3d 21, 26 (1st Cir. 2004)(instructing trial courts to consider threat of confusion, misleading of the jury, or unnecessary delay posed by eyewitness expert testimony)(*reversed on other grounds*). The Supreme Court has recognized, "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," and therefore, "the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over

experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)). Therefore, as the Second Circuit commented, "the very breadth of the discretion accorded trial judges in admitting [expert testimony] under Rules 702 and 403 should cause them to give the matter more, rather than less, scrutiny." *Nimely*, 414 F.3d at 397 (quoting *United States v. Young*, 745 F.2d 733, 766 (2nd Cir. 1984)(Newman, J., concurring)).

    B.    **Application to the Facts of This Case**

        1.    **The Defendant has not Established that the Opinion is Reliable**

The Defendant has submitted the expert's CV, which does show that the proposed witness is properly trained in psychology. However, in that he has not provided a report that sets forth his opinion and the basis for it, the Defendant has not established that the opinion – whatever it may be – is reliable. The Government cannot further address the reliability of the opinion because it has not been revealed or justified in a report, but reserves the right to contest it's reliability if a report is produced.

        2.    **The Testimony is Unlikely to Assist the Trier of Fact**

What exactly the Defendant proposes to offer into evidence thirteen days from now remains unclear due to the lack of a report containing the expert's opinion and the basis therefor, but if it is to be general testimony concerning why a person might provide inconsistent statements after a stressful event, it should be excluded because such evidence is strongly disfavored by the courts for its inability to assist the trier of fact.

Expert testimony that is limited to matters of general knowledge is not admissible because it is not useful to the trier of fact. *United States v. Mitchell*, 49 F.3d 769, (D.C. Cir.

1995)(upholding exclusion of expert linguistics testimony where recorded conversation in evidence and contents within common understanding of jury); *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir.1991) (noting that "Rule 702 . . . dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject"); *United States v. Welch*, 368 F.3d 970, 974 (7th Cir. 2004) (noting that "[w]here expert testimony addresses an issue of which the jury is already generally aware, such testimony does not assist the jury") (internal quotation marks omitted)(overruled on other grounds); *United States v. Affleck*, 776 F.2d 1451, 1458 (10th Cir. 1985) (excluding expert testimony because "the average person is able to understand that people forget").

> As stated in the Advisory Committee's Note to Fed. R. Evid. 702:
>
> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

Fed. R. Evid. 702, Advisory Comm. Notes. Similarly, expert testimony that duplicates arguments available to counsel for the parties is not helpful to the trier of fact. *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004)("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.")(citing 4 Weinstein's Federal Evidence § 702.03[2] [a]).

Many courts have noted that jurors are generally aware of most issues related to faulty memory. *See United States v. Stokes*, 388 F.3d 32 (2004)(affirming exclusion of expert testimony given that psychological factors that affect memory are generally known to jurors); *United States v. Welch*, 368 F.3d 970 (2004)(*reversed on other grounds*)(same); *United States v.*

*Hall*, 165 F.3d 1095 (8th Cir. 1999)(noting that general reliability of eyewitness identification is a matter of common understanding).

As indicated by these decisions, jurors are generally familiar with the information needed to assess the reliability of witness testimony. Jurors understand that people sometimes forget, that memory is imperfect, that stress affects our perceptions, and that memories fade with the passage of time. *See*, *e.g.*, *United States v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996)(affirming exclusion of expert testimony regarding eyewitness identification on ground that "[i]t is common knowledge that memory fades with time"); *United States v. Rosenberg*, 297 F.2d 760, 763 (3rd Cir. 1958)(holding that failure to disclose pretrial statement of witness admitting that her recollection had faded over time did not violate *Brady* where that fact was one of "universal experience and common knowledge, of which the jury must have been aware in any event"). It is common knowledge that people can forget things and confuse details, especially when they are focused on other matters. *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 497 (10th Cir. 2000)(noting in context of wrongful termination suit that "[f]orgetfulness is an exceedingly common human frailty. Many of us tend to forget names. This is particularly so where we briefly meet a lot of different people . . . ."). Jurors are well aware that people sometimes make mistakes about things they were told and/or who told them, that they sometimes selectively remember or even fabricate events, or that stress can have an impact on memory or perception. It is also common knowledge, even cliche, that people sometimes hear what they want to hear. Therefore, based on their own common sense, knowledge and experiences, jurors can understand that any witness, including a defendant, might be mistaken when he or she tries in good faith to remember and testify about details of past events and conversations, and are unlikely to place

undue reliance on a witness's confidence where other evidence indicates that witness's confidence in his or her own recollection is misplaced. None of these matters require explanation by an expert and, thus, the proposed testimony should be excluded. *See generally United States v. Cruz*, 981 F.2d 659 (2nd Cir. 1992)(holding that the admission of expert testimony on the role of a "broker" in a drug deal was reversible error because it was limited to common knowledge, and was used essentially to bolster the credibility of the prosecution's central fact witness).

The admission of expert psychological testimony on memory and eyewitness identification has been approved only in limited circumstances, such as in cases involving cross-racial eyewitness identifications, repressed memory, and cases involving medical conditions affecting memory. *See*, *e.g.*, *United States v. Brownlee*, 454 F.3d 131 (3rd Cir. 2006)(cross-racial eyewitness identification); *Rock v. Arkansas*, 483 U.S. 44 (1987)(approving expert testimony regarding hypnotically enhanced memory of child abuse); *United States v. Shay*, 57 F.3d 126 (1st Cir. 1995)(holding criminal defendant entitled to present expert testimony that he suffered from a mental disease that led him to tell grandiose, self-incriminating lies); *United States v. Sasso*, 59 F.3d 341 (2nd Cir.1995)(evidence of witness's psychological condition admissible where relevant to witness's ability to perceive or recall events or testify accurately).

Even in such unusual cases, the courts have limited expert testimony to particular issues. *See*, *e.g.*, *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993)(noting that expert testimony regarding eyewitness identification allowed only in "narrow circumstances"); *United States v. Stevens*, 935 F.2d 1380, 1400 (3rd Cir. 1991); *United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir. 1997)(noting that none of the decisions relied upon by the proponent of the expert testimony

"embraced the position that expert testimony regarding eyewitness reliability ought to be admitted wholesale in every case").[3] Courts determine admissibility on a case-by-case basis, and admit only testimony relevant to particular issues raised by the facts of the case. *E.g.*, *United States v. Mathis,* 264 F.3d 321, 335 (3rd Cir. 2001)(distinguishing between certain memory expert assertions that were properly excluded and others that would be of assistance to the trier of fact). *But see Smith*, 122 F.3d at 1357-59 (reaffirming *per se* rule of inadmissibility).

Absent special circumstances raising factual issues beyond the common knowledge and experience of jurors, expert testimony on memory and/or observation consistently has been rejected, with the courts holding that issues related to faulty memory or observation are adequately addressed through cross-examination of witnesses and jury instructions. *See*, *e.g.*, *United States v. Carter*, 410 F.3d 942, 950-51 (7th Cir. 2005)(holding that cross-examination and jury instructions eliminated the need for expert testimony). "Such expert testimony will not aid the jury because it addresses and issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute." *United States v. Hall*, 165 F.3d 1095, 1104 (7th Cir. 1999) (citing *United States v. Hudson*, 884 F.2d 1016, 1023 (7th Cir. 1992) (eyewitness identification expert)).

This case involves no cross-racial eyewitness identifications, no witnesses with mental conditions affecting memory, no repressed memories, no hypnotically-refreshed memories, and no other circumstance in which the admission of expert testimony on memory has been approved in past cases. To the contrary, the jury in this case will be asked to make the same credibility

---

[3] Needless to say, appellate decisions affirming the admission of expert testimony do not stand for the proposition that excluding the evidence would have been an abuse of discretion.

determinations required in every case in which witnesses recount historical events and conversations -- nothing more or less. Thus, this case falls well within the mainstream of cases in which expert testimony regarding memory has been rejected. Indeed, a finding that expert testimony is relevant and admissible in this case would not only be unprecedented, it would also supply authority for the admission of such testimony in virtually all cases – criminal and civil – as it is the rare case in which the perceptions and memories of witnesses are not challenged. This is not, and cannot be, the law. *See Krist v. Eli Lilly and Co.*, 897 F.2d 293, 298 (7th Cir. 1991)(stating, "Certainly in routine cases the trial judge is not required to allow wide-ranging inquiry into the mysteries of human perception and recollection.").

There is every reason to believe that skillful cross-examination by defense counsel will serve as an equally, if not more, effective tool in for informing jurors about any stresses the Defendant might have been experiencing. *Rodriguez-Felix*, 450 F.3d at 1125 ("Jurors, assisted by skillful cross-examination, are quite capable of using their common-sense and faculties of observation" to determine the reliability of a witness's identification)(citing *Smith*, 156 F.3d at 1053 and *Hall*, 165 F.3d at 1107). *See also United States v. Affleck*, 776 F.2d 1451, 1458 (10th Cir. 1985)(affirming the exclusion of testimony offered by defendant in securities fraud case to explain "how well or how poorly people are able to remember things the way that they do" on the ground that "[t]he average person is able to understand that people forget; thus, a faulty memory is a matter for cross-examination."). In addition, if necessary, jury instructions may be provided to the jury. See, e.g., *United States v. Thoma*, 713 F.2d 604, 607-08 (10th Cir.1983); *United States v. Rincon*, 28 F.3d 921 (9th Cir. 1994)(holding that even informative expert testimony that is counter-intuitive may not "assist the trier of fact" if the court conveys the same information by

means of jury instructions).

General expert testimony about the frailties of human observation and memory has been rejected consistently by the courts where the witnesses under attack were third parties testifying against criminal defendants. The use of such evidence in this case is particularly novel–and troubling– because the person whose memory is being impeached is the Defendant himself. The Defendant proposes to explain away inconsistencies in his statements to law enforcement by offering opinions into "possible reasons for such alleged inconsistencies" (Doc. # 44) without actually taking the stand and testifying and, conveniently, without being subjected to cross-examination. This is not only unhelpful to the trier of fact, but it is also unfair to the Government because it would be precluded from calling the Defendant as a witness to confirm or deny these opinions that may or may not pertain to the Defendant. The Defendant hopes to use an expert to put a stamp of credibility upon himself without actually taking the stand.

Therefore, because there exists no special circumstances warranting expert testimony related to the credibility of the witnesses in this case, the proposed testimony should be excluded. The jury undoubtedly will know and understand that a person under stress may not observe or recall events with perfect accuracy, just as they undoubtedly will know that a person being charged with murder has a strong motive to be untruthful. That determination is for a jury to make.

### 3. Credibility Determinations are the Province of the Jury

"[T]he evaluation of a witness's credibility is a determination usually within the jury's exclusive purview." *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995)(upholding the exclusion of an expert anthropologist's review of surveillance tapes); *United States v. You*, 113

F.3d 1233 (4th Cir. 1997)(unpublished)(upholding the exclusion of expert testimony "concerning how traumatic events influence perception and memory" because it is "essentially [a] challenge [to] the victim's credibility and therefore [would] invade the exclusive purview of the jury."). The courts generally have guarded carefully the jury's authority to make credibility determinations, particularly from the danger of expert testimony. "[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury–determining the credibility of witnesses." *Hall*, 165 F.3d at 1107.

In addition to being unhelpful to the jury because memory and perception evidence falls squarely within common experience, expert testimony would pose a risk to the jury's independent obligation to determine credibility. This duty should be guarded particularly closely when the person whose credibility is in question is the Defendant, who is an interested witness and who may or may not take the stand and be subject to cross-examination.

### 4. The Proposed Testimony is Likely to Confuse, Mislead, and Unduly Influence the Jury, and Waste Time

Even helpful and relevant evidence may be excluded pursuant to Federal Rule of Evidence 403, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As previously discussed, the probative value of the expert's proposed testimony is minimal, at best, in that the average juror has sufficient knowledge and experience to understand that stressful events my affect memory and perception. The weight on the side of the scale that favors admission therefore is light.

The heavier weight by far sits squarely on the side of the balance that demands exclusion. Jurors may be tempted to cede their authority and responsibility to determine the credibility of the Defendant to the his retained expert by cloaking it in an unwarranted "aura of special reliability and trustworthiness" *United States v. Cruz*, 363 F.3d 187, 194 (2nd Cir. 2004)(citation and quotation marks omitted). *See also United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004)(*en banc*), *cert. denied*, 125 S. Ct. 2516 (2005)("Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."); *Daubert*, 509 U.S. at 595; *United States v. Rodriguez-Berrios*, 573 F.3d 55, 72 (1st Cir. 2009) (noting that memory expert's testimony carries "a great deal of inherent reliability, which jurors can often confuse for infallibility," and holding that therefore such testimony, "can, and should, be excluded."). Accordingly, even if this Court were to find that the proposed testimony were relevant and helpful, it should be excluded because its probative value is far outweighed by the potential for confusing an misleading the jury, and unnecessarily protracting the trial.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the testimony of John Roberts Clement be excluded. In the alternative, the Government requests a pre-trial hearing pursuant to *Daubert* to determine the admissibility of Clement's testimony, and request the Court to Order the Defendant to produce a suitable report from Clement prior to this hearing.

## CONFERENCE

The Government has consulted with defense counsel concerning this Motion, and they oppose it.

RESPECTFULLY SUBMITTED, this the 18th day of May, 2011.


ANNE M. TOMPKINS
UNITED STATES ATTORNEY


/s Don Gast
_____

DON GAST
ASSISTANT UNITED STATES ATTORNEY
N.C. Bar Number: 23801
100 Otis Street, Suite 233
Asheville, NC 28801
Telephone: (828) 271-4661
Facsimile: (828) 271-4670
Don.Gast@usdoj.gov

## CERTIFICATE OF SERVICE

      The foregoing document was filed electronically via ECF and was served on counsel for the Defendant via ECF. The email address contained in ECF for defense counsel is as follows:

      Rusty McLean           rlmclean3@alo.com
      Brad Ferguson          bradhferg@yahoo.com


ANNE M. TOMPKINS
UNITED STATES ATTORNEY


/s Don Gast

DON GAST
ASSISTANT UNITED STATES ATTORNEY
N.C. Bar Number: 23801
100 Otis Street, Suite 233
Asheville, NC 28801
Telephone: (828) 271-4661
Facsimile: (828) 271-4670
Don.Gast@usdoj.gov