# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## BRYSON CITY DIVISION

### CRIMINAL CASE NO. 2:10cr09

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| | ) | |
| **JAMES ERNEST LESPIER.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for a New Trial [Doc. 88].

## PROCEDURAL HISTORY

On December 7, 2010, the Defendant was charged in a two count Superseding Bill of Indictment with first degree murder, in violation of 18 U.S.C. §1111, and with using a firearm during a crime of violence which caused the death of another person, in violation of 18 U.S.C. §924(j)(1). [Doc. 20]. After a six day trial, the Defendant was found guilty by jury verdict on June 8, 2011 on both counts. [Doc. 86]. On June 20, 2011, he timely moved for a new trial alleging both juror and prosecutorial misconduct as well as error by the trial court. [Doc. 88].

# STANDARD OF REVIEW

Rule 33 provides that the trial court may, on a defendant's motion, grant a new trial "if the interest of justice so requires." Fed.R.Crim.P. 33. The Fourth Circuit Court of Appeals has "observed that a court should exercise its discretion to grant a new trial sparingly[.]" United States v. Perry, 335 F.3d 316, 321 (4th Cir.), cert. denied 540 U.S. 1185, 124 S.Ct. 1408, 158 L.Ed.2d 91 (2004) (internal quotation and citations omitted).

The Defendant has moved for a new trial based on juror misconduct during deliberations. He claims that two jurors were overheard inappropriately discussing the case with each other during a lunch recess taken after the jury had begun deliberations. "[T]he Sixth Amendment does not mandate judicial consideration of juror misconduct allegations regarding influences *internal* to the deliberation process." McNeill v. Polk, 476 F.3d 206, 226 (4th Cir.), cert. denied 552 U.S. 1043, 128 S.Ct. 647, 169 L.Ed.2d 516 (2007) (citing Tanner v. United States, 483 U.S. 107, 127, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987)), (emphasis in original). Indeed, juror testimony may not be taken about the deliberative process itself. Fed.R.Evid. 606. Thus, misconduct inherent in internal deliberations is beyond the scope of judicial inquiry. Tanner, 483 U.S. at 127; Robinson v. Polk, 438 F.3d 350, 363 (4th Cir.), cert. denied 549 U.S.

1003, 127 S.Ct. 514, 166 L.Ed.2d 383 (2006).

The Defendant also claims he is entitled to a new trial based on prosecutorial misconduct. When the allegation is that the prosecutor committed misconduct during the trial, it is a question of law whether the prosecutor's conduct unconstitutionally tainted the outcome of the case. United States v. Collins, 415 F.3d 304, 307 (4th Cir. 2005). That is, the Defendant must show that the conduct "so prejudiced [his] substantial rights that [he] was denied a fair trial." United States v. Wilson, 624 F.3d 640, 656 (4th Cir.), cert. denied __ U.S. __, 132 S.Ct. 451, 181 L.Ed.2d 293 (2011). The Defendant therefore must show first that the conduct was improper and if so, that it caused prejudice. United States v. Smith, 441 F.3d 254, 264 (4th Cir. 2006). Prejudice is evaluated by the use of four factors: "(1) the degree to which the [conduct] could have misled the jury; (2) whether the [conduct] w[as] isolated or extensive; (3) the strength of proof of guilt absent the inappropriate [conduct]; and (4) whether the [conduct was] deliberately [done] to divert the jury's attention." Collins, 415 F.3d at 309.

The Defendant's final grounds for a new trial are based on his allegations of trial court error. He first claims that this Court improperly denied his request to submit the testimony of an expert witness in the field of sleep

deprivation. In determining whether expert opinion evidence is admissible, the trial court considers whether the proposed testimony is actually within the juror's common knowledge and experience. Schmitz-Werke Gmbh+Co. v. Rockland Industries, Inc., 37 F. App'x. 687, 692 n.5 (4th Cir. 2002); United States v. Lester, 254 F.Supp.2d 602 (E.D.Va. 2003).

Finally, the Defendant argues that he is entitled to a new trial because of the erroneous use of a jury instruction. A "trial court has broad discretion in framing its instructions to a jury." Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co., 510 F.3d 474, 484 (4th Cir. 2007) (internal quotation and citation omitted). Jury instructions do not furnish a basis for a new trial as long as, "taken as a whole, they adequately state the controlling law." Id.

## DISCUSSION

**Juror Misconduct.**[1]

At the conclusion of the jury charge on June 7, 2011, the jury began its deliberations which, after an overnight recess, resumed the morning of Wednesday, June 8, 2011. [Doc. 83]. At mid-day, the jury was recessed for

---

[1]In the Memorandum of Law in support of this motion, defense counsel refers to another incident involving a juror which occurred during the trial. [Doc. 88-2 at 2]. That incident was explored on the record during the trial and resolved without issue. Counsel conflates that incident with this one but does not cite it as grounds for a new trial. Thus, it will not be further addressed.

lunch after sending a note so requesting. [Doc. 84].

Among the spectators who had watched the trial were two law students who were serving an internship with the Cherokee Tribal Court. [Doc. 88-1]. They were eating their lunch on Wednesday, June 8, 2011, at a picnic table outside the courthouse when they saw a group of jurors returning to court from a local restaurant. [Id.]. When two of the jurors, both men, were about ten feet from the picnic table, they stopped and engaged in a conversation with each other. [Id.]. The younger man was gesturing with his hands and appeared to be animated as he spoke to the older man. [Id.]. Both of the interns overheard a portion of the conversation. [Id.]. Intern Shannon Swimmer reported that she overheard the younger man say to the older man, "Well, if we just acquit him ... ." [Id. at 1]. She could not hear the remainder of the conversation. [Id.]. Intern Michael Danielson heard the younger man say to the older man, "We just can't acquit him otherwise he goes ... ." [Id. at 3]. He also could not hear the remainder of the conversation. [Id.]. Both reported that the younger man continued to make emphatic hand gestures. [Doc. 88-1]. Because the interns concluded that the two jurors were discussing the trial during a recess from deliberations, they reported the incident to Cherokee Tribal Court Judge Kirk Saunooke. [Id.]. They also

reported the incident to defense counsel.  [Id.].

Defense counsel cite this as an example of juror misconduct, claiming that these two jurors inappropriately engaged in deliberations during the lunch recess without the entire jury present.  Counsel also argue the exchange shows that the younger juror impressed on the older one that if they acquitted the Defendant, then he would not be punished.  This, they claim, amounted to undue influence during an ex parte deliberation between the two, absent which, it is likely that the older juror would have voted to acquit.

Upon learning of this incident, counsel did not request that the jurors be questioned or that a hearing be conducted.  Nor could they since

> a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith.

Fed.R.Evid. 606(b).

> District courts are subject to very stringent limitations on their authority to question jurors about their deliberations, and to use one or more juror's testimony to impeach the verdict of all.  In fact, for nearly a century, the Supreme Court has recognized a near-universal and firmly established common-law rule *flatly prohibiting* the use of juror testimony to impeach a verdict.

United States v. Siegelman, 640 F.3d 1159, 1185 (11th Cir. 2011)(citing

Tanner, 483 U.S. at 127) (emphasis in original; other citations omitted).

Absent a threshold showing of improper *outside* influence, neither the Sixth Amendment nor Rule 606(b) requires an inquiry into jury deliberations. Id.; United States v. Gravely, 840 F.2d 1156, 1159 (4th Cir. 1988). An allegation of deliberation by part of the jury outside the jury room constitutes a claim of internal juror misconduct. Siegelman, 640 F.3d at 1185-87. The purported pressure put to bear by the younger juror on the older one is also a matter of internal influence. Id.; Gravely, 840 F.2d at 1159 (the alleged pressure brought by one juror on another constitutes internal influence only); United States v. Smith, 317 F. App'x. 323 (4th Cir. 2008) (juror's expressed concern that jury did not adequately deliberate related only to internal pressure, not external influence); United States v. Cuthel, 903 F.2d 1381, 1383 (11th Cir. 1990) (being pressured to make a decision is the "normal dynamic of jury deliberations, with the intense pressure often required to reach a unanimous decision"); Grooms v. Wainwright, 610 F.2d 344, 347 (5th Cir.), cert. denied 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (1980) (jurors' statements with no evidence of outside influence are internal deliberations).

Moreover, the fact that this conversation occurred during a lunch recess from deliberations of the jury as a whole shows there was no premature

deliberation, merely intra-jury discussion.  Pi%25na v. Washington, ___ F. App'x. ___, 2011 WL 4703066 (9th Cir. 2011).  Even where fewer than all members of the jury engage in a limited deliberation concerning the possible penalties faced by the defendant, it remains a matter of internal deliberation absent a showing of outside influence.  Siegelman, 640 F.3d at 1187.  Even assuming that such conduct constitutes misconduct, "it is not the sort of conduct that this Court can or should directly inquire into by interrogating jurors, nor is it ... grounds for granting a new trial."  Id.; Bauberger v.Haynes, 632 F.3d 100, 110 (4th Cir.), cert. denied ___ U.S. ___, 132 S.Ct. 189, 181 L.Ed.2d 97 (2011) (influence is external and subject to judicial consideration if it is an outside influence on the partiality of the jury such as communication or contact from outside the jury); Barnes v. Branker, 2012 WL 373353 (M.D.N.C. 2012) (contact between juror and her pastor external).

Considering the totality of the circumstances, the weight of the Government's evidence, the length of the jury's deliberations and the instructions to the jury, there is no reasonable possibility that the Defendant was prejudiced as a result of the incident at issue.  Siegelman, 640 F.3d at 1187; Robinson, 438 F.3d at 362-63 (the nature of the influence was internal intra-jury pressure; therefore, Sixth Amendment does not require judicial

consideration of the issue).  The motion for a new trial on the ground of juror misconduct is therefore denied.

**Prosecutorial misconduct.**

During closing argument, the prosecutor used a power point presentation that had not been admitted during the trial.  The slides of the presentation consisted of the points the prosecutor was making in his argument and photographs and other exhibits admitted into evidence.  At one point in that presentation, however, the prosecutor projected on the screen an illustration which had not been admitted into evidence and was intended to dramatize how the victim could have been killed.  The Defendant argued that this illustration was at variance with the evidence introduced at trial.  Defense counsel immediately objected; the Court sustained the objection; and the image was removed.   The Defendant now moves for a new trial based on the fact that the image was published to the jury, albeit for a brief moment.

As previously noted, the Defendant must show first that this conduct was improper.  Smith, 441 F.3d at 264.  According to the Government, the image was merely an illustration of the Defendant's version of how the victim was killed as disclosed in his interview with law enforcement.  Although the Government claims the image was an inference based on trial testimony, it

does not cite to any portion of the trial where such evidence was admitted. Smith, 441 F.3d at 264 (prosecutor may not suggest guilt that is not explicitly tied to the evidence because it suggests to the jury that the prosecutor has independent knowledge). The use of such a drawing, dramatization or image is improper. Indeed, the Court immediately sustained the Defendant's objections to it and the image was immediately removed.

The Court cannot find, however, that the conduct was prejudicial to the Defendant. Prejudice is evaluated by the use of four factors: "(1) the degree to which the [conduct] could have misled the jury; (2) whether the [conduct] w[as] isolated or extensive; (3) the strength of proof of guilt absent the inappropriate [conduct]; and (4) whether the [conduct was] deliberately made to divert the jury's attention." Collins, 415 F.3d at 309. The prosecutor's conduct was obviously intended to persuade the jury and as such was deliberate. Nonetheless, the image was shown only momentarily and, thus, was highly unlikely to have misled the jury. Smith, 441 F.3d at 264-65; United States v. De la Rosa-Sanchez, 182 F.3d 928 (9th Cir. 1999) (prosecutor's reference to photograph not in evidence not prejudicial where jurors briefly saw photo and heard single, isolated remark). The prosecutor did not comment on the image since the objection of defense counsel was sustained.

United States v. Billman, 257 F. App'x. 904 (6th Cir.), cert. denied 555 U.S. 919, 129 S.Ct. 279, 172 L.Ed.2d 206 (2008) (prosecutor showed jury unadmitted photo during closing and stated the photo showed how crime occurred; improper conduct but no prejudice in view of curative instruction). The jury was instructed that the arguments of counsel were not evidence in the case and there is no reason to believe that the jury did not follow this cautionary instruction. Id.; Collins, 415 F.3d at 309 (a curative instruction prevents misleading of the jury); Francis v. Franklin, 471 U.S. 307, 324 n.9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (courts presume juries follow their instructions absent extraordinary situations). Finally, the momentary display of the image could not have overwhelmed the evidence in the case. De la Rosa-Sanchez, 182 F.3d 928.

The Defendant also claims that the use of "enlarged photographs of the decedent and the minor child" constituted prosecutorial misconduct because the photographs were introduced only to garner sympathy. The photographs were admitted into evidence during the Government's presentation of evidence. In what manner the admission of these photographs *by the Court* constitutes prosecutorial misconduct is not explained. Since the Defendant has failed to show this was improper conduct, the claim will not be further

addressed.  <u>Smith</u>, 441 F.3d at 264;  <u>Madison Services, Inc. v. United States</u>, 94 Fed.Cl. 501, 503 (Fed.Cl. 2010) (declining to address issues raised by a "shotgun approach ... spraying about as many arguments as can be made no matter the worth.").

The last claim of prosecutorial misconduct relates to statements made by witnesses during their testimony which allegedly were not disclosed by the Government in its Rule 404(b) Notice.[2]  The Defendant objected to two of the statements cited in the motion, and the objections were sustained.  [Doc. 88-2 at 5].  In addition to contemporaneous instructions, the jury was instructed during the final charge not to consider as evidence anything which was not admitted in the trial.  <u>United States v. Smith</u>, 233 F. App'x. 297, 301 (4th Cir.), <u>cert. denied</u> 552 U.S. 963, 128 S.Ct. 408, 169 L.Ed.2d 286 (2007) (it is presumed juries follow a court's instruction to disregard testimony) (citing <u>United States v. Williams</u>, 461 F.3d 441, 451 (4th Cir.), <u>cert. denied</u> 549 U.S. 1047, 127 S.Ct. 616, 166 L.Ed.2d 457 (2006)).  Juries are deemed to follow the instructions of the trial court, even cautionary instructions about potentially

---

[2]Federal Rule of Evidence 404(b) requires the Government to provide "reasonable notice" prior to trial of evidence of other acts which may show motive, opportunity, intent or absence of accident.  The notice provision of the Rule was amended effective December 1, 2011.  Citations to the Rule in this decision refer to the Rule in effect at the time of trial.

prejudicial evidence. <u>Francis</u>, 471 U.S. at 324 n.9; <u>Smith</u>, 441 F.3d at 269 ("Jurors are presumed to adhere to cautionary instructions issued by the district court."); <u>United States v. Love</u>, 134 F.3d 595, 603 (4th Cir. 1998). Assuming that the attempted introduction of the evidence was improper, the objections of defense counsel to this evidence were sustained and the jury was instructed to disregard it. The evidence could not have misled the jury since they were instructed to ignore it and these two incidents were isolated. <u>Williams</u>, 461 F.3d at 451; <u>Collins</u>, 415 F.3d at 309. Although the prosecutor may have deliberately tried to introduce this evidence, he was not successful and the strength of the other evidence against the Defendant precludes any finding of prejudice. <u>Id</u>.

The Defendant also argues that portions of the testimony the victim's sister, Laura Smith, which were admitted into evidence during the trial exceeded the scope of the Government's Rule 404(b) Notice. [Doc. 88-2 at 5]. In that Notice, the Government cited the following as potential Rule 404(b) evidence: the Defendant's "telling the victim's sister that he wanted to kill the victim by poisoning her food in or around the summer of 2008[.]" [Doc. 47 at 2]. During the trial, the prosecutor elicited the following testimony from the victim's sister:

Q. What did he [the Defendant] say about their relationship in that conversation?

A. He loved her but he hated her. He would tell her he was going to put rat poison in her food.
...
Q. Did he talk about wanting to kill her?

A. Other than the rat poison. He never said "I'm going to kill her," but it would be sometimes "She just gets on my nerves. I could just kill her, strangle her."

[Doc. 87-4 at 15-16].[3] This testimony was followed by a cautionary instruction from the Court. [Id., at 16-17].

The Advisory Committee Notes to Rule 404(b) include the following:

[N]o specific form of notice is required. The Committee considered and rejected a requirement that the notice satisfy the particularity requirements normally required of language used in a charging instrument. Instead, the Committee opted for a generalized notice provision which requires the prosecution to apprise the defendant of the *general nature of the evidence* of extrinsic acts.

Fed.R.Evid. 404(b) Advisory Committee Notes (emphasis provided). Indeed, the language of the Rule itself specifies only that there be "reasonable notice" of the "general nature of any such evidence[.]" Fed.R.Evid. 404(b). There is no substantive difference between evidence of the Defendant's threat to kill

---

[3]The Defendant has not alleged that the prosecutor had any idea the sister would expand her testimony in this manner. It is therefore doubtful that Rule 404(b)'s notice requirement applies in this setting.

the victim by poisoning and the sister's other testimony that the Defendant stated he "could just kill her, strangle her."  The Notice clearly specified testimony that the Defendant had threatened to kill the victim.  United States v. Blount, 502 F.3d 674, 678 (7th Cir. 2007) (notice of prior and subsequent drug distributions sufficient despite not providing "exactly a fountain of details");  United States v. Williams, 49 F. App'x. 420, 425 (4th Cir. 2002) (notice sufficient although it did not contain detail of testimony to be elicited, merely disclosed "other armed robberies"); United States v. Morrison, 133 F.3d 919 (4th Cir. 1998).  Indeed, the Defendant moved to exclude such evidence prior to trial and thus had notice of the general nature of evidence concerning the Defendant's threats to kill the victim.  United States v. Morton, __ F. App'x. __, 2012 WL 90144 (4th Cir. 2012) (although government did not file Rule 404(b) notice concerning prior convictions, defendant had actual notice as shown by motion in limine); United States v. Basham, 561 F.3d 302, 327 n.12 (4th Cir.), cert. denied __ U.S. __, 130 S.Ct. 3353, 176 L.Ed.2d 1245 (2010) (defendant had sufficient notice where he objected to admission before government even reached it).  The Defendant has failed to show that the prosecutor's conduct was improper.  Smith, 441 F.3d at 264.  It is therefore unnecessary to determine whether the Defendant was prejudiced.

**Trial Court error.**

Prior to trial, the Government moved to preclude the Defendant's use of John Clement (Clement), a psychologist, as an expert. [Doc. 48]. The Government's motion was based on two grounds: first, the Defendant had failed to provide an expert report, in violation of Federal Rule of Criminal Procedure 16(b)(1)(C); and second, the proposed testimony would not be of any aid to the jury.[4] [Id.]. The Government's discovery included statements from the Defendant in which he had inconsistently reported the details of the evening the victim was killed, although consistently claiming the killing was accidental. The Defendant sought to use Clement's testimony to establish that a person deprived of sleep, as the Defendant claimed to be, might act in such a manner because his ability to recall would be impaired. It is noted that the Defendant has not cited any law in support of this ground and, for this reason alone, has failed to carry his burden of showing that the expert was necessary for an adequate defense. United States v.Thurmon, 413 F.3d 752, 755 (8th Cir.), cert. denied 546 U.S. 1069, 126 S.Ct. 816, 163 L.Ed.3d 642 (2005).

---

[4]Approximately six days prior to trial, the Defendant emailed a copy of an expert report to the Government. The Court later found that the testimony of Clement would be of no assistance to the trier of fact.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 which provides, in pertinent part, that such testimony may be admitted if it relates to scientific or specialized knowledge which will assist a jury to understand the evidence.  Before such testimony may be presented to the jury, the trial court is required to conduct a "gatekeeping" function by first determining whether the methodology underlying the testimony is scientifically valid and, if so, by then determining whether that methodology may be properly applied to the facts at issue.  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  In other words, the Court must make a preliminary determination as to whether the proposed testimony is both relevant and reliable.  Id.

The purpose of expert testimony is to assist jurors in understanding complex subjects which are outside the realm of common knowledge.  United States v. Sorto, 141 F.3d 1161 (4th Cir.), cert. denied 524 U.S. 921, 118 S.Ct. 2308, 141 L.Ed.2d 166 (1998).  If the proposed testimony from an expert is within the realm of common sense, it is not an appropriate subject for an expert witness.  Id. (citation omitted); United States v. Dorsey, 45 F.3d 809, 815 (4th Cir.), cert. denied 515 U.S. 1168, 115 S.Ct. 2631, 132 L.Ed.2d 871

17

(1995). "Where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous." United States v. Coutentos, 651 F.3d 809, 821 (8th Cir. 2011) (internal quotation and citation omitted). Juries are familiar with the results and symptoms of sleep deprivation as well as memory loss. Id. Problems with "memory are easily understood by jurors ... [who] can adequately weigh these problems through common-sense evaluation." United States v. McGinnis, 201 F. App'x. 246, 248 (5th Cir. 2006) (internal quotations and citations omitted). Indeed, the admission of Clement's testimony could have impermissibly bolstered the Defendant's version of the events by providing a psychological explanation for his varying accounts of the shooting. Westcott v. Crinklaw, 68 F.3d 1073, 1076 (8th Cir. 1995) (testimony from expert that defendant suffered from post-traumatic stress and thus gave varying accounts of incident impermissibly bolstered credibility which is an issue solely in the province of the jury). This ground in support of the Defendant's motion for a new trial is therefore rejected.

The Defendant's final argument in support of his motion is that the trial court erred by giving a jury instruction concerning false exculpatory statements. The instruction related to the Defendant's statements made to law enforcement authorities during interviews conducted after the shooting.

During the final charge, the following jury instruction was given over the Defendant's objection:

> [S]tatements knowingly and voluntarily made by the Defendant upon being informed that a crime had been committed or upon being accused of a criminal charge may be considered by you, the jury. When a defendant voluntarily offers an explanation or voluntarily makes some statement tending to show his innocence, and if you, the jury, find the Defendant knew this statement or explanation was false, then you, the jury, may consider this as showing a consciousness of guilt on the part of a defendant since it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.

[Doc. 94 at 2-3].

The Defendant claims this instruction was improper in view of <u>United States v. McDougald</u>, 650 F.2d 532 (4th Cir. 1981). In <u>McDougald</u>, as in this case, the defendant made exculpatory statements in the course of being interviewed by law enforcement authorities. The government at trial offered evidence showing that these statements were false and that the defendant knew they were false when he made them. As a result, the trial court gave a false exculpatory statement instruction much like that given in this case. The Fourth Circuit held that the instruction was properly given. "While general denials of guilt later contradicted are not considered exculpatory statements, any other exculpatory statement which is contradicted by evidence at trial

justifies the giving of this jury instruction." <u>Id</u>. at 533.

During the Defendant's trial, the Government offered evidence from the law enforcement authorities who first arrived at the scene of the shooting. Those officers testified that the Defendant, who was covered in blood, volunteered to them that the gun had gone off when he tried to take it away from the victim; that is, t[5]he shooting which resulted in the victim's death was accidental.

During a later interview with Special Agent Cosby (Cosby) of the Federal Bureau of Investigation, the Defendant testified that he was asleep on the couch and awoke to the sound of gunfire when the victim shot three to five rounds to his left and above his head. They then struggled, fell to the floor, and while the Defendant was on top of the victim and while her arms were above her head, the gun, which was in her right hand, went off.

After a break in the interrogation, Cosby interviewed the Defendant again and this time, according to Cosby's testimony, the Defendant's account was slightly different. The Defendant reported the victim shot to the right of his head before the struggle and he was straddling the victim while pulling the

---

[5] The physical evidence in the wall was clear that the shots were above the Defendant's dead and to his left, which would have been to the victim's right if she were facing him.

gun up when it discharged.

The Defendant was also interviewed by Detective Mary Lambert of the Cherokee Tribal Police. During this interview, the Defendant reported that the struggle for the gun began while the Defendant and the victim were standing. The victim was hitting the Defendant in the face with her left hand while holding the gun in her right hand. They fell to the floor at which time it discharged.

The pathologist, Dr. Sam Davis, testified that it would have been impossible for the victim to have been holding the gun at the time of discharge due to the angle of the wound. The weapon at issue was found underneath the victim's left thigh.

The Defendant's various pre-trial versions of how the shooting occurred all tended to show that it was accidental. Other evidence introduced by the Government, however, contradicted his accounts of an accidental shooting. The Defendant claims that such inconsistencies cannot be equated with falseness and do not show that he knew his statements were untrue. The Defendant's inconsistent statements, however, could be seen by the jury as evidence of a consciousness of guilt. McDougald, 650 F.2d at 533; United States v. Acklin, 72 F. App'x. 26 (4th Cir. 2003). False exculpatory statements

are generally admissible as being "probative of a defendant's guilty conscience." United States v. Bridges, 43 F.3d 1468 (4th Cir. 1994). The Government was therefore entitled to the false exculpatory statements instruction and no trial error occurred. McDougald, 650 F.2d at 533 ("Such instructions have long been accepted by the courts."); United States v. Smith, 188 F.3d 505 (4th Cir. 1999) (instruction proper where defendant claimed he was in the control center sewing a guard's pants but no such repairs were done on the pants); United States v. Johnson, 2009 WL 2447978 (W.D.Tenn. 2009), affirmed 443 F. App'x. 86 (6th Cir. 2011) (defendant made repeated false statements to authorities therefore instruction properly given).

In conclusion, none of the errors asserted by the Defendant warrant the granting of a new trial.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for a New Trial [Doc. 88] is hereby **DENIED**.

Signed: March 27, 2012

Martin Reidinger
United States District Judge

22